In this circuit, the government breaches a plea agreement when it criticizes the sentence that it promised to recommend. That's exactly what happened here. The prosecutor promised to recommend a sentence within the guideline range, but then told the court that a guideline sentence would not make much sense because it might actually encourage him to commit new crimes. So your case risks and falls on Kachucha? I'd say it does. It rises and falls on Kachucha. We think Kachucha is materially identical to this case. Basically the same thing happened. There were two guideline ranges in play. The applicable one was the lower one. The prosecutor promised to recommend a sentence within the as a formal matter, but then criticizes that sentence as too low. That's exactly what the prosecutor did in this case. Well, he kind of very, pardon the choice of word, but cleverly purports to argue about the philosophy of guideline ranges and public policy behind the guideline range. So it's not like a direct confrontation with their previous agreement. It kind of tries to slip around it. There may be some slipping around, but this Court's case says you can't do that. You can't thinly disguise these arguments anyway. To the extent there's any disguise, it's clearly thin. And saying this sentence would operate as an anti-deterrence, there's nothing really disguised about that. Sentences are supposed to deter, not operate as an anti-deterrence. Does the fact that this case is before us on plain error review distinguish it in any way from Kaczucia? No, it doesn't, because Kaczucia is relevant for us to the point that it establishes a breach, which is error. Kaczucia is the law, so that's our plainness, too. It's plain under Kaczucia. Kaczucia is binding to insurgent precedent, very similar circumstances, and articulates the very principle that we're relying on, which is that you can't reject material reservations about the recommendation that you've promised to make. That's undermining it, it's paying lip service to it. Is it different, you just used the word inject material reservations, which is the language in Kaczucia. Does that relate to arguments that are material, or is that limited to the injection of material facts? Well, in Kaczucia, it was more argument, but it can also be facts. But in this case, there was no material fact that the prosecutor brought out in the argument. Those facts were already in the consent report and before the court. Oh, there was nothing there. So there was only argument. It was argument. And so it's your position when the government says we will agree to recommend a this is what he should get. And what I'm intrigued about is very few decisions that anybody makes in our lives are 100% one way. Right. And so I'm wondering just how far your argument goes. I mean, what if the question was brought up and said, we promised that we would recommend a sense of a certain limit. And that is correct. There are eight factors that should be considered. Seven of them favor that limit. And for that reason, we are unequivocally, enthusiastically, vociferously arguing that limit, just like we promised the defendant we would argue. We have to agree, though, this, like most cases in the world, aren't 100% one way. And there is this one dangling particle out there that we've got to consider. Would that be a violation, do you think? I think that'd be a tougher case for sure. I don't know that that'd be a violation. I mean, I don't think they should do that. I think best practices is if you I'm not asking for best practices, but it seems to me that's pretty much what happened here, that the court said, because there's that we've agreed we're going to support this sentence. And then here are reasons that we do that. There is a concern about deterrence. But concluding our argument, we are supporting this sentence. I disagree with that reading of the record, because I don't think the prosecutor is saying here are eight reasons why you should do what I said, and one reason you should go the other way. The whole thing is the reason the judge should go the other way. This entire argument is about how the guideline sentence doesn't make sense and would operate as an anti-deterrent. You read what the prosecutor says, you don't see any reasons why a guideline sentence is appropriate. He doesn't articulate to people what What opinion you would like us to write? Are you trying to have us write an opinion that said, on balance, this was a non-recommendation? On balance, this was a recommendation not to sentence within the guidelines? Or are you asking us to say that because there was one argument to the contrary, that it wasn't pure enough and therefore wasn't a recommendation? The way I would recommend writing the opinion would be to say, Kachucha says you can't reject material reservations. So you can't come into court and say, we recommend a guideline sentence, but imposing a guideline sentence wouldn't make a lot of sense because it might encourage injury as well. You can't do that. If he had said maybe ten pages of other stuff about what a great guy he was, why the guideline changes were good, maybe there would be enough of a mix that it would be a tougher case. There's no mix here. The entire thrust of the argument is that, yeah, we request a guideline sentence, but I really thought about asking for an upper variance and here are all the reasons. End of story. That's it. The whole argument was about why an upward variance was correct, although formally he was bound to recommend a guideline sentence. So I just don't think this case, I'm sorry, Judge, I'm going to interrupt. Go ahead and finish your thought. I'm just going to, I don't think this case raises the kind of factual situation that you're questioning. Well, exactly. You have one obstacle out there, and after Kachucha, we had a case a couple years later, Yanez-Rodriguez. And in that case, the court distinguished Kachucha because the defendant had asked for a downward departure and the prosecutor was required to respond and oppose that motion for a more lenient sentence, even though the prosecutor ultimately endorsed the plea bargain, plea agreement sentence. And in that case, our panel of our court held that the prosecutor had an obligation to oppose the defendant's motion for a more lenient sentence and that in that context, there's going to be reasons given why the sentence that was agreed to was the appropriate sentence and the lower sentence would not be appropriate. Right. And so that's, you know, different than Kachuca, which you're primarily relying on. So help me get around Yanez and distinguish it based on the circumstances of your client. Sure. I think the main difference between Yanez on one hand and Kachucha in our case on the other is that Yanez was purely an argument about the facts. The defendant was actually asking for a downward variance. The government wanted a guideline sentence. And all the government does is argue the facts, that he's not entitled to a downward variance. Here we have a prosecutor and a Kachuca saying, I promise to recommend a guideline sentence, but here are all the problems with a guideline sentence. What was the rationale for the departure downward? The rationale for the departure downward were just the history and characteristics of the defendant, his lack of motivation to return to the United States and things like that. This was a legal reentry. This was a legal reentry case. That's right. And this was his third conviction for that crime, correct? Right. Right. And I think as we say in our briefs, you know, where the prosecutor started off when he's explaining all the reasons why he considered an upward variance, he first talks about the defendant's record and thinks he was troubled about that. That kind of argument is usually going to be permissible in this context when you have the parties taking different sentencing positions. Where this prosecutor really went too far is to say a guideline sentence doesn't make sense. The sentence that I'm recommending doesn't make sense. That's going way beyond what happened in Yanis Rodriguez, where really what all the prosecutor was saying was this guy's dangerous, he's got problems, don't give him a downward variance, give him the guideline sentence that I'm asking for. This prosecutor, on the other hand, is saying the guideline sentence I'm asking for wouldn't make sense because it might actually encourage him to re-offend, which is the exact opposite of what a sentence should do. That's a step beyond Yanis Rodriguez. It's two or three steps beyond, and it puts it squarely under a patchouli. When does the prosecutor cross the line, though, in opposing the motion? He's got to make a persuasive argument. Sure. That seems like it's inevitably going to bleed somewhat into your position that, well, he's not really endorsing the agreed-on sentence. Right. I think there's a big distinction here between arguing the facts, which is what Yanis Rodriguez was, and arguing that your own sentence doesn't make sense. That's more of a legal argument than a factual argument, and I think that in a case like this or like Yanis Rodriguez, where there were big differences between the parties' sentencing positions. We are asking for a downward variance. Government's asking for top-of-the-guidelines. Government can come in and aggressively argue the facts. What the government can't do is come into court and say the sentence that I'm asking for, if you follow my recommendation, it wouldn't make very much sense because it might actually encourage them to come back. What if the government used these exact same arguments but said, Your Honor, we have to decide, you have to decide where within the skyline range to go, and we want you to go to the very top, but not beyond, and then make exactly the same arguments you made here? These arguments are incompatible with that kind of request because what the government before might encourage them to come back. That precludes a guideline sentence, the logic that that does, because his sentences before were higher than that range. So I don't think that would be a permissible argument. I think that's essentially what the prosecutor did here, was say, We request a guideline sentence, but a guideline sentence doesn't make sense because he got more before. If you want to deter him, you've got to give him more. If you don't give him more, it might actually do the opposite of what the sentence is supposed to do. That is a very clear, I think, undisguised argument for an upward variance in a case where the prosecutor promised to recommend a sentence under the guidelines. If the court doesn't have any more questions about the error, this is plain error, and we have the burden on harm, and I'd like to spend a minute or so talking about that, too. So I think the best indicator of prejudice on this record is that the court's sentence and the court's rationale tracked entirely the prosecutor's proper argument. The gist of his argument was a higher sentence is necessary to deter him, a higher sentence than what he got last time. That's exactly what the court did. The court stressed deterrence, imposed a 55-month sentence, and it emphasized that that sentence was higher than the sentence that he had gotten before. So, you know, all we have to show here is a reasonable probability. We don't have to show a preponderance of the evidence. It just undermines the outcome that the result would have been different. And given how closely the court's rationale and sentence tracks the prosecutor's improper argument, I think we clearly meet that burden. The court's rationale didn't really track the prosecutor because the court said that the most important factor or most egregious factor was that this defendant waited to come back into the United States illegally until right after his supervised release time for a prior conviction had expired. So he wouldn't any longer be vulnerable to a violation of supervised release. And the court called that the most egregious factor. I don't believe the government made that argument, do you? No, you're right. The government did make that argument. So when you're saying that all the government, all the court did was follow the government's argument, you're agreeing now that what the court said was its most egregious concern is one that the government didn't raise. Well, you're right about that, and perhaps I overstated that somewhat. That was a concern and a great concern of the court that was not part of the government's argument. But if you read the sentencing, the sentencing explanation as a whole, she stresses deterrence and she stresses that the sentence is higher than the one before, which does map onto the prosecutor's argument. For prejudice, we don't have to show that she just completely capitulated to their point of view, only that their argument had an effect. You know, we don't have to show a carbon copy. We just have to show that maybe it had some influence, a reasonable probability that it had some influence. It must have put us further questions. Thank you, Counsel. Mr. Murphy for the United States. Counsel, members of the court, Jim Murphy. I'm an assistant U.S. attorney here in Colorado, and I represent the United States. There is one thing that is not in dispute here, and that is that if the government makes a promise, it keeps it. Whoa, that's a bit of an overstatement. It just, I mean, Mr. Murphy, please. Everybody understands what an agreement is. And if you say to even a child, if you say to a child, if you do not do X, I will recommend that your mother not spank you. All right? We're going to come back to this case, right? Oh, yeah, we're going to come back to this case. And if that child proceeds to do precisely that, he refrains from that conduct, and then the mother turns her back and does exactly what she said she wouldn't do, everybody understands that. Now, let's get to your case. Your case, this case, the government said, if you plead guilty, if you plead guilty, we will agree not to do certain things. And what is your agreement? Will you tell us what you agreed to do if the guy pled guilty? It was an affirmative promise. There were a number of terms, some of which are not in dispute here. But the one that's in dispute is the government promised to recommend a sentence that was within a certain range set by the Sentencing Commission, and not to recommend a sentence that was higher. We didn't expressly state that. That's implicit. We're going to recommend a sentence within the advisory range. All right? And the prosecutor did that. And implicit in that is you would then stand mute, and you're not going to argue against your own agreement. Correct? The second half of that, absolutely. We cannot argue against something we just promised. I mean, that's duplicity. All right. Now, standing mute, Judge, absolutely not. A plea agreement does not require the prosecutor to stand mute. Well, you don't have to stand there like a stooge in the corner, but you do have to live up to the good faith interpretation of your agreement. Absolutely. All right. Part of keeping our promises. So please tell us what you did. The prosecutor, unlike the case that my colleague here is so fond of... Kachucha. Kachucha. And we may or not be fond of it, but we're bounded by it. This court is certainly bound by other precedents, unless they're distinguishable, which is an important concept here. Right. Right. And in Kachucha, the word unprompted exists in this court's opinion. The prosecutor stood up and started arguing against something he'd said he'd recommend. He said, well, but the sentence is too low. Well, what happened here... Help me out, God, on this case. I understand what happened here, if you pardon me for just a second. That's fine. Sorry. If my reading of the briefs is correct. What happened here is that following your recommendation, your agreement, your plea agreement, that you would do certain things with respect to the sentence, and you did do that. Then you proceeded to argue against your very own position by arguing that the guideline range was inappropriate, and you just argued to the court how things had changed, and if you don't give this guy a stiffer sentence than what we're recommending, you're giving him a bad message, and he's going to go ahead and do all kinds of other bad things. Who knows whether that has relevance or not? But the point is that you agreed not to do that, and then you proceeded exactly to do what you promised you wouldn't do. And therein is where I have a problem with your position in this case. So you can persuade me that I'm wrong, please. Judge Lucero, if we had phrased things the way you did and the way counsel did when he was arguing, I think you might be right. That's not what happened. What happened is the judge said, Mr. Assistant U.S. Attorney down in District Court, would you please address the defendant's motion for a lower sentence? That did not happen in Kachuta. It happened here. And his very first words were, well, Your Honor, I certainly oppose it. He then made the remarks that are in question, which took all of probably three or four minutes, and he concluded by saying, so I'm certainly opposed to the defense's motion for a 24-month sentence of imprisonment. And I recommend, Your Honor, a sentence at the high end of the guideline range, which is 37 months. And every word that he has said between those two things, Judge Lucero, were addressed, one, in opposition to defense counsel's motion for a lower sentence, and two, to explain to the court why he was recommending a sentence at the high end of the guideline range. Which is contrary to what you had agreed in the plea agreement, to what he had agreed in the plea agreement. Absolutely not. He had not agreed. I promise not to oppose the motion for a lower sentence. Okay. So back to the first example I start with. So if you don't do this conduct, as said to the child, we will refrain from doing these things. And then proceed to argue to the mother, oh, no, but you should spank him, because if you don't spank him, he is going to learn all these bad behavioral traits, et cetera, et cetera, et cetera. And please disagree. Oh, by the way, we oppose your spanking him, but please spank him. Kind of like, put your fingers across the side of your back kind of argument. Okay. That's how it sounds from this end of the table. That's a fascinating scenario, but perhaps a case for another day. When a child grows up, you know, who knows where it will end up, the criminal justice system. We hope not here. Hope for the best. There is some language in here that I think you're having trouble with, Judge Lozano, and I think I understand. Because the prosecutor starts talking about, well, his prior sentences, because, you see, Mr. Rodriguez, the defendant here, this was actually his fourth conviction for illegally entering the United States. Two of them were felonies. A third was a misdemeanor, and this is all disputed. It's in a pre-sentence report. But some of his prior sentences were substantial, 41 months, 51 months. And when someone continues to commit the same crime, normally the sentences get larger, not smaller. So the prosecutor is standing before the chief district judge trying to explain, well, Judge, I'm recommending 37 months, which is lower than the other sentences. And he's trying to explain, Judge, we discussed that in the office. We were trying to decide what kind of plea agreement to enter into, what kind of recommendation to make. And I admit I had issues with this, but they lowered the guidelines. That's what the prosecutor told me. So the guidelines made me do it. That's what I call the slippery art. The sentencing commission made me do it. One second here. The sentencing commission lowered the guidelines. We said in Kachucha, quote, while a prosecutor normally need not present promise or recommendation to the court with any particular degree of enthusiasm, that is, you don't have to cheer for it, it is improper, improper, emphasize improper, for the prosecutor to inject material reservations about the agreement to which the government has committed itself, end of quote. And it seems to me, with all due respect, that is precisely what happened here. Is you said, if you plead guilty, we will agree to these conditions of the plea agreement. And then having said, yes, we're going to do that, you then proceed to argue why the court shouldn't do that. And you use the guideline argument, oh, the guidelines have changed, and the previous sentences that he'd received were stiffer, and now the sentences under the present guidelines are not as stiff. But those present guidelines had already been adopted at the time that you entered into the plea agreement. So it's not as if you entered into the plea agreement and then the plea guideline ranges changed. No, certainly not. That's not what happened. No, no. So the guideline range, you already knew that the guideline ranges had changed, but then you proceed to argue, and then I'm going to finish my argument because you want to proceed with yours. You then proceed to say to the court, because the guideline ranges have changed, you should give a stiffer sentence than the one we are recommending and that we agreed to in the plea agreement. Judge, if the prosecutor had done that, I'd concede this case. That's not what he said, Judge Lucero. Seriously. The word is why. Judge, this is why I decided not to pursue a departure of variance upward. That's why they entered into this plea agreement. That's why our office had to talk about this and think, well, this is a lesser sentence, but look, they changed the guidelines. That's the law. We're going to follow the law. We're going to recommend a lower sentence. But it has to be explained, Judge. You can't just – we're called to account all the time for recommending a sentence that's too low. Sometimes we're called to account for recommending a sentence the judge thinks is too high. I mean, the prosecutor is thinking, wait a minute, the judge isn't going to get this. I'm recommending a lower sentence, and this is the fourth time that this defendant has illegally entered this country. And when he gets here, he commits crimes. In fact, it came to the attention of our office. Okay. If that were this case, I'd be wearing it with you. I'd be cheering right along because people shouldn't violate the law. They shouldn't come to this country and commit crimes. It's not the way it should be. And that's why the prosecutor says that's why I'm doing this. That's why I decided not to pursue a departure of variance because the guideline range changed. He wasn't arguing against his own recommendation. He was explaining why he was recommending an even lower sentence than the defendant had received before. So your position is that there is a material change of circumstances that explains why the prosecutor did something they would not ordinarily do. And the prosecutor's position was the judge is going to be curious about why we're recommending this low level, and we are going to support that argument by explaining this change of the law. Is that your position? That is one of the things he's doing. He's explaining why he's making this recommendation and why he opposes a downward departure. And I think that is a very good argument. And I think the court would wonder why you're recommending a lower sentence. If that stopped there, it would be an easy case for me. But it was that next sentence that makes it hard. The court had only said, the prosecutor only said, this is lower than we normally do because the guidelines changed. That was up to the commission. We're followers of the law. The law has changed, so we're recommending under the current law that this is the appropriate sentence. But the prosecutor then went further and said, I've got to tell you, judge, this is an anti-deterrent. It's so low. And it's known, the prosecutor didn't go on to say it, but it's known that you can just depart. So it was that anti-deterrent language that to me makes this a difficult case. And that wasn't in this Gutascha opinion about the anti-deterrent, was it? Well, that exact language didn't appear. I think the prosecutor said the sentence that we're recommending is too low, which is a direct contradiction. Too low. But, I mean, we can't call that a direct opinion for us because that didn't discuss the weight that a language anti-deterrent should be given. If this prosecutor, Judge Abell, had said the sentence I'm recommending would be an anti-deterrent, I think we might have a problem. But the context is just critical here, Judge, because he's describing the guidelines change, and then he's basically thinking out loud, you know, by lowering the guidelines of somebody like this, who's now come back four times illegally, it probably wouldn't deter him. But it is the law. They changed the guidelines, and the commission can do that. Is your position under Kouchaka that there was – that the prosecutor did not inject reservations, or that he did inject reservations about the propriety of the agreed-on sentence, but his statements were not material to the outcome? Judge Timkovich, I think reading this as a whole and considering the prefacing remarks that I'm opposing the downward variance and the concluding remark for the prosecutor says the same thing, I don't think the prosecutor intended to challenge his own recommendation or to say I'm recommending a sentence that doesn't make sense. That's not what he meant to say in context. I can see that Judge Abell's stumbling over the words anti-deterrent, but he's describing the guidelines that change, and the prosecutor may like them, the prosecutor may not. We follow the law. Sentencing Commission sets the guidelines, and we follow them. And he's saying, Judge, we knew it all in advance. We talked about it. We decided it was a Sentencing Commission's call. We're going to go with that, and we're going to recommend a guideline sentence, even though there are issues there. He's not talking about his sentence. He's talking about the guidelines somewhat in abstract. You're just conceding, well, that's what they did. Now, you're low on time, but Mr. Sanderford distinguished Yanez by interpreting it as a discussion about the facts, and that this is different because the prosecutor's philosophizing on the wisdom of the sentencing guideline range, and that that's the difference between that case, which involved a motion for a downward departure in this case. What's your take on Yanez? I don't think that distinction really holds up, Judge Simcovich, because in both this case and in Yanez-Rodriguez, the prosecutor is arguing against a defense motion for a lower sentence, which Kachuka did not have. And whether it's based on the facts or the law, I don't think makes any difference. I think both are the case. But these remarks are a fair response to the defendant's argument that, well, we went on an even lower sentence below the guidelines. And the prosecutor, in part, is saying, well, look, the current sentence is barely adequate to deter, and certainly a lower sentence is not. And that's what Yanez-Rodriguez has said. Okay. Thank you. I hope you're over time without any other questions. Can I just ask one thing? Certainly. So the key sentence, I did not decide to pursue a departure. But the fact that the guideline range is now 30 to 37 months seems, if anything, to be an anti-deterrent. Do you think the case would be different if the court had said not, I mean, if the prosecutor had said not that the guideline range seems to be an anti-deterrent, as opposed to saying the sentence we are recommending is an anti-deterrent? Yes. I think that's a very important distinction. So you're saying that this anti-deterrent language was not addressed specifically to the sentence, not telling the court the sentence you were recommending is an anti-deterrent. I mean, it's an anti-deterrent. But rather, the range is an anti-deterrent. So it seems like a very minute semantic difference, but that's where you hang your hat. Well, hang the hat on many things I've said here, Judge Ebell. But he said almost an anti-deterrent, by the way. But it's absolutely critical that if he had said that, well, I'm recommending this sentence, but I don't believe in it and I don't think it's fair, and made some, you know, reference to departing upward, then I think we'd have a problem. But he's simply explaining that the guidelines were lower, and that's why they had to talk about this, or our office did, and decided what we were going to recommend. And he is talking about the sentencing guidelines themselves and then says that the law is the law. And so we're going to follow that and we're going to keep our promise, which we made and decided long in advance, and we're going to recommend what the guidelines say, whether we like it or not. That's not undermining our work. That's explaining it, Judge. All right. I think we understand your argument, Mr. Murphy. Thank you. Mr. Sanderford, you had some rebuttal time. Thank you. I just have two quick points, and they both can relate to questions. I can't hear you. I'm sorry. I just have two points in rebuttal, and they both relate to questions that you asked, Judge Evelda. I want to start with the last one about the, well, the anti-deterrent point, and about, well, I guess this is the first one, whether the anti-deterrent thing is distinguishable from Kachucha. This is why I think it's not. Kachucha, the prosecutor said, the guidelines don't make sense. Here the prosecutor says these guidelines don't make a great deal of intuitive sense. The other thing the prosecutor in Kachucha said was the guidelines are way too low. Saying the sentence is an anti-deterrent is the same thing as saying it's too low. Sentences aren't supposed to operate as anti-deterrents. If it's an anti-deterrent, it's because it's too low. So I don't think there's any functional difference between those two. Can I ask, interrupt there? The court then went on to explain her sentence to the parties. Did the court in her sentencing statement indicate at all that she relied on or was influenced by the prosecutor's statement that we've been discussing? Well, she refers to him expressly and approvingly, his arguments. A lot of her, a lot of her explanation tracked what he said. She uses the same words to describe her reaction to his record. And the other larger point here is that what prosecutors say in court matters. This is why defendants bargain for these recommendations even when they're not binding. It's because when a representative of the United States stands at the podium and talks to the court and it's about to impose sentence, they listen. So, you know, I'm not saying there's a presumption of prejudice or anything like that, but the backdrop here is these things do matter as a general matter. And I think the fact that the court's analysis, not completely, but in the end of the day. But none of those words would have been spoken, presumably, without the being required to respond to the motion for a downward departure. Oh, I see. Well, I see that I'm about out of time. No, go ahead. To answer your question. You know, yeah, he was asked to respond, but the appropriate response was, we oppose the downward variance and we're asking for a guideline sentence. Not to go on and say, but if you oppose a guideline sentence, it might operate as an anti-determinant. You know, the fact that he's responding doesn't make a difference. Right. But we allowed a more vigorous response in yon-ans. Sure, but more vigorous on the facts. And I really think that's a key difference here. Why is that a material difference, a tax versus a policy? It's a material difference because he promised to recommend a guideline sentence and he's saying that a guideline sentence would operate as an anti-determinant. That he can't do. He can say he deserves a high-end guideline sentence because he's a really bad dude. That would be fine. We can't do anything about that if the parties are advocates, even when there's a plea agreement. But what you can't do is come in and criticize the very sentence that you promised him to recommend, which is what they did here. Thank you, counsel. Your time has expired. Counsel will be excused. The case shall be submitted. And let's turn to our third argument. Thank you, counsel. That was well presented.